UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT MARKER,

       Plaintiff,                              Hon. Gordon J. Quist

v.                                                  Case No. 1:13-CV-1113

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 46 years of age on his alleged disability onset date. (Tr. 165). He successfully completed high school and previously worked as an auto assembly supervisor, appliance assembler supervisor, a parking attendant, and a gaming monitor. (Tr. 60). Plaintiff applied for benefits on November 17, 2010, alleging that he had been disabled since June 14, 2010, due to heart disease, GERD, muscle fatigue, manic depression, and "borderline diabetes." (Tr. 165-71, 211). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 108-64). On May 7, 2012, Plaintiff appeared before ALJ David Bruce with testimony being offered by Plaintiff and a vocational expert. (Tr. 66-107). In a written decision dated May 10, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 50-61). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On December 2, 2009, Plaintiff participated in a treadmill stress test the results of which were unremarkable. (Tr. 318). On December 15, 2009, Plaintiff participated in an echocardiography examination the results of which revealed "no wall motion abnormalities with normal left ventricular function." (Tr. 327).

On January 13, 2010, Plaintiff was examined by Dr. Ogubay Mesmer. (Tr. 328-30). A physical examination revealed the following:

    Blood Pressure:    138/84 Sitting, Left arm, regular cuff

      Pulse:         64/min
      Respirations:  16/min
      Weight:       234.00 lbs
      Height:       73"
      BMI:          31

> Constitutional: cooperative, alert and oriented, well developed, well nourished, in no acute distress
> Skin: warm and dry to touch, no apparent skin lesions, no apparent masses noted
> Head: normocephalic, non tender, no palpable masses
> Eyes: EOMS intact, PERRL, conjunctivae and lids unremarkable
> ENT: ears unremarkable, throat clear, without erythema, good dentition
> Neck: no palpable masses or adenopathy, no thyromegaly, JVP normal, carotid pulses are full and equal bilaterally without bruits
> Chest: normal symmetry, no tenderness to palpation, normal respiratory excursion, no intercostal retraction, no use of accessory muscles, normal diaphragmatic excursion, clear to auscultation
> Cardiac: regular rhythm, S1 normal, S2 normal, no S3 or S4, apical impulse not displaced, no murmurs, no gallops, no rubs detected
> Abdomen: abdomen soft, bowel sounds normoactive, no masses, non-tender, no bruits
> Peripheral Pulses: femoral pulses are full and equal bilaterally with no bruits auscultated, popliteal pulses are full and equal bilaterally with no bruits auscultated, posterior tibial pulses are full and equal bilaterally with no bruits auscultated
> Extremities & Back: no deformities, no clubbing, no cyanosis, no erythema, no edema, there are no spinal abnormalities noted, normal muscle strength and tone
> Psychiatric: appropriate mood, memory and judgment
> Neurological: no gross motor or sensory deficits noted

(Tr. 328-29). The doctor characterized Plaintiff's condition as "stable" and indicated he would continue Plaintiff's current medication and "see him back in the office in 1 year." (Tr. 329).

On November 9, 2010, Plaintiff reported to the emergency room complaining of chest pain which rated "about 4 to 5 out of 10." (Tr. 284). Plaintiff described his pain as "a heavy weight like on his chest." (Tr. 284). A physical examination revealed the following:

> GENERAL: Alert and oriented 46-year-old Caucasian male who appears his stated age.
> HEENT: Grossly within normal limits. He is sporting a goatee.
> NECK: Carotids are brisk without bruits. There is no jugular venous distention.
> LUNGS: Clear to auscultation.
> HEART: Regular S1, S2 rhythm. Heart sounds are distant but audible. There is no systolic flow murmur, no click or heave.
> ABDOMEN: Soft, nontender, bowel sounds are present in 4 quadrants.
> EXTREMITIES: No peripheral edema or cyanosis.
> VITAL SIGNS: Blood pressure 146/86, pulse is 72 and regular, respirations 16 and nonlabored. He is afebrile.

(Tr. 285).

Plaintiff participated in an EKG examination the results of which revealed "normal sinus rhythm with no acute ST-T wave changes." (Tr. 284). X-rays of Plaintiff's chest were unremarkable. (Tr. 299). Laboratory testing revealed that Plaintiff did not experience a myocardial infarction. (Tr. 281). Plaintiff was treated with medication after which he was "pain free and hemodynamically stable." (Tr. 281). Plaintiff was diagnosed with: (1) angina pectoris, resolved; (2) coronary artery disease, status post coronary artery bypass graft surgery; (3) gastroesophageal reflux disease; (4) hypertension; (5) dyslipidemia; and (6) reactive airway disease. (Tr. 281). It was further noted that Plaintiff smokes "several" cigars daily "despite recommendations to quit." (Tr. 284-85).

On November 12, 2010, Plaintiff participated in a stress test the results of which revealed "no scintigraphic evidence of reversible myocardial ischemia." (Tr. 331). On November 12, 2010, Plaintiff participated in an echocardiography examination the results of which revealed "no wall motion abnormalities with normal left ventricular function." (Tr. 341).

5

On December 6, 2010, Plaintiff's wife completed a report regarding Plaintiff's daily activities. (Tr. 223-30). She reported that Plaintiff prepares family meals daily, cleans the house daily, washes laundry weekly, mows the lawn twice weekly, cares for the family dogs daily, and goes shopping once every two weeks. (Tr. 223-26). Plaintiff's wife also reported that Plaintiff spends time communicating with others on the phone and via the computer. (Tr. 227). She also reported that Plaintiff can lift 50 pounds and walk one quarter mile. (Tr. 228). Plaintiff completed an activities report the same day providing similar answers. (Tr. 247-54).

X-rays of Plaintiff's chest and abdomen, taken January 31, 2011, revealed the following:

> Supine and upright AP abdomen. Upright PA chest.
>
> Stable normal heart size and pulmonary vascularity status post multiple CABG
> No pneumothorax or pleural effusion evident.
> Lungs are radiographically clear.
>
> No free air or pneumatosis evident.
> No evidence of bowel obstruction or wall thickening.
> No mass or organomegaly suggested.
> No pathologic calcifications demonstrated.
> No incidentals

(Tr. 426).

On February 10, 2011, Plaintiff participated in a consultive examination conducted by Anne Kantor. (Tr. 350-56). Plaintiff reported that he was disabled because he "can't do stress things or physical things." (Tr. 350). Plaintiff reported that "anytime I do physical stuff I can't breathe, and I get chest pains and leg cramps." (Tr. 350). Plaintiff also reported that he experienced fatigue, depression, and anxiety. (Tr. 350). With respect to his daily activities, Plaintiff reported that

6

he does the grocery shopping and "fix[es] things around the house." (Tr. 353). As for household chores, Plaintiff reported, "I do everything." (Tr. 353). The results of a mental status examination were unremarkable. (Tr. 353-55). Plaintiff was diagnosed with adjustment disorder with mixed anxiety and depressed mood, chronic. (Tr. 356). His GAF score was rated as 57.[1] (Tr. 356). Kantor further noted that Plaintiff "is capable of understanding, remembering and carrying out instructions and making decisions regarding work-related matters," but "may have mild to moderate difficulty interacting appropriately with others in public and in the work place." (Tr. 355).

On February 11, 2011, Plaintiff participated in a nocturnal polysomnography examination the results of which revealed that he experienced "mild" obstructive sleep apnea. (Tr. 369-70). Plaintiff was instructed to begin using a nasal CPAP machine. (Tr. 367). Treatment notes dated March 25, 2011, indicate that Plaintiff was "having some trouble adjusting to the sense of the continuous positive airway pressure." (Tr. 365).

On April 1, 2011, Dr. Roy Parke completed a form regarding Plaintiff's residual functional capacity in which he concluded the following. (Tr. 358-61). Plaintiff can sit continuously for two hours and stand continuously for two hours. (Tr. 359). During an 8-hour workday with normal breaks, Plaintiff can sit for "about 2 hours" and can stand/walk for "about 2 hours." (Tr. 360). Plaintiff can frequently lift/carry less than 10 pounds, occasionally lift/carry 10 pounds, but can never lift/carry 20 pounds. (Tr. 360). Plaintiff requires a sit/stand option and, moreover, is required to elevate his legs when sitting. (Tr. 360). Plaintiff can occasionally look down, turn his

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 57 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

head right or left, look up, hold his head in a static position, twist, stoop, and crouch/squat. (Tr. 360-61). Plaintiff can use his hands to grasp, turn, and twist objects only 50 percent of the work day. (Tr. 361). Plaintiff can use his fingers to perform fine manipulations only 50 percent of the work day. (Tr. 361). Plaintiff can use his arms to perform reaching activities only 1 percent of the work day. (Tr. 361).

On July 11, 2011, Plaintiff was examined by Dr. Mesmer. (Tr. 392-94). A physical examination revealed the following:

> Blood Pressure: 140/78 Sitting, Left arm, regular cuff
> Pulse: 76/min.
> Respirations: 16/min.
> Weight: 237.00 lbs.
> Height: 73"
> BMI: 31
>
> Constitutional: cooperative, alert and oriented, well developed, well nourished, in no acute distress
> Skin: warm and dry to touch, no apparent skin lesions, no apparent masses noted
> Head: normocephalic non tender, no palpable masses
> Eyes: EOMS Intact, PERRL, conjunctivae and lids unremarkable
> ENT: ears unremarkable, throat clear, without erythema, good dentition
> Neck: no palpable masses or adenopathy, no thyromegaly, JVP normal, carotid pulses are full and equal bilaterally without bruits
> Chest: normal symmetry, no tenderness to palpation, normal respiratory excursion, no intercostal retraction, no use of accessory muscles, normal diaphragmatic excursion, clear to auscultation
> Cardiac: regular rhythm, S1 normal, S2 normal, no S3 or S4, apical impulse not displaced, no murmurs, no gallops, no rubs detected
> Abdomen: abdomen soft, bowel sounds normoactive, no masses, non-tender, no bruits
> Peripheral Pulses: femoral pulses are full and equal bilaterally with no bruits auscultated, popliteal pulses are full and equal bilaterally with no bruits auscultated, dorsalis pedis pulses are full and equal bilaterally with no bruits auscultated, posterior tibial pulses are full and equal bilaterally with no bruits auscultated.

> Extremities & Back: no deformities, no clubbing, no cyanosis, no erythema, no edema, there are no spinal abnormalities noted, normal muscle strength and tone
> Psychiatric: appropriate mood, memory and judgment
> Neurological: no gross motor or sensory deficits noted

(Tr. 392-93). The doctor characterized Plaintiff's condition as stable and maintained his current medication regimen. (Tr. 393).

On January 16, 2012, Plaintiff was examined by Dr. Mesmer. (Tr. 387-89). A physical examination revealed the following:

> Blood Pressure:   130/82 Sitting, left arm, regular cuff
> Pulse:            92/min.
> Respirations:     16/min.
> Weight:           240.00 lbs.
> Height:           73"
> BMI:              31
>
> Constitutional: cooperative, alert and oriented, well developed, well nourished, in no acute distress
> Skin: warm and dry to touch, no apparent skin lesions, no apparent masses noted
> Head: normocephalic, non tender, no palpable masses
> Eyes: EOMS Intact, PERRL, conjunctivae and lids unremarkable
> ENT: ears unremarkable, throat clera, without erythema, good dentition
> Neck: no palpable masses or adenopathy, no thyromegaly, JVP normal, carotid pulses are full and equal bilaterally without bruits
> Chest: normal symmetry, no tenderness to palpation, normal respiratory excursion, no intercostal retraction, no use of accessory muscles, normal diaphragmatic excursion, clear to auscultation
> Cardiac: regular rhythm, S1 normal, S2 normal, no S3 or S4, apical impulse no displaced, no murmurs, no gallops, no rubs detected
> Abdomen: abdomen soft, bowel sounds normoactive, no masses, non-tender, no bruits
> Peripheral Pulses: femoral pulses are full and equal bilaterally with no bruits auscultated, popliteal pulses are full and equal bilaterally with no bruits auscultated, dorsalis pedis pulses are full and equal bilaterally with no bruits auscultated, posterior tibial pulses are full and equal bilaterally with no bruits auscultated

9

> Extremities & Back: no deformities, no clubbing, no cyanosis, no erythema, no edema, there are no spinal abnormalities noted, normal muscle strength and tone
> Psychiatric: appropriate mood, memory and judgment
> Neurological: no gross motor or sensory deficits noted.

(Tr. 388).

On January 20, 2012, Plaintiff participated in a cardiac catheterization procedure the results of which revealed that he was experiencing "three-vessel coronary artery disease" with "normal left ventricular systolic function." (Tr. 383-84).

On March 19, 2012, Dr. Mesmer completed a report regarding Plaintiff's residual functional capacity in which he reported the following. (Tr. 443-46). Plaintiff can walk no more than three blocks "without rest or severe pain." (Tr. 444). During an 8-hour workday with normal breaks, Plaintiff can sit for "less than 2 hours" and stand/walk for "less than 2 hours." (Tr. 444). Plaintiff requires a sit/stand option and needs to elevate his legs when sitting. (Tr. 445). Plaintiff can occasionally lift less than 10 pounds, but can never lift 10 pounds or more. (Tr. 445). Plaintiff can occasionally climb ladders, but can only rarely twist, stoop, crouch/squat, and climb stairs. (Tr. 445).

On April 27, 2012, Dr. Parke reported the following. (Tr. 510-13). Plaintiff can walk only 50 yards "without rest or severe pain." (Tr. 511). Plaintiff can sit continuously for two hours and can stand continuously for two hours. (Tr. 511). During an 8-hour workday with normal breaks Plaintiff can sit for "about 2 hours" and can stand/walk for "about 2 hours." (Tr. 512). Plaintiff requires a sit/stand option and must elevate his legs when seated. (Tr. 512). Plaintiff can occasionally lift less than 10 pounds, but can rarely lift 10 pounds and never lift 20 pounds. (Tr. 512). Plaintiff can occasionally look down, turn his head right or left, look up, but can rarely hold

his head in a static position, twist, climb stairs, and can never stoop or crouch/squat. (Tr. 512-13).

Plaintiff testified at the administrative hearing. When asked why he is unable to work, Plaintiff responded:

> I have two - - it's heavy on my chest. I'm not me. I can't do the job I used to do. I run out of breath. My chest gets heavy. I can't breathe. Fatigue.

(Tr. 79). When asked what he is able to do around the house, Plaintiff responded "very little." (Tr. 79-80). Plaintiff reported that on a typical day he sits and drinks coffee, "tr[ies] to move around a little bit," and then takes a nap. (Tr. 80). When asked to rate his pain on a scale of 1 to 10, Plaintiff testified that his pain "is constant, about 3 or 4." (Tr. 84). Plaintiff testified that he could lift "no more than 10 pounds" and, if working an eight hour day, would have to take six to eight breaks "just to sit down, get my legs propped up." (Tr. 86-87). Plaintiff also reported that "if I had to take a nap, I'd have to take a nap." (Tr. 87). Plaintiff also testified that he experiences difficulty understanding and remembering and carrying out tasks. (Tr. 95-96).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a

---

[2] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

11

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) asthma; (2) chronic obstructive pulmonary disease (COPD); (3) coronary artery disease; (4) anginal pain; (5) obesity; (6) depression; and (7) anxiety, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 52-54).

---

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

The ALJ next determined that Plaintiff retained the capacity to perform light work[3] subject to the following limitations: (1) he can lift/carry and push/pull 20 pounds occasionally and 10 pounds frequently; (2) during an 8-hour workday, he can sit for six hours and stand/walk for six hours; (3) he can never be exposed to humidity, wetness, atmospheric conditions, weather, extreme cold or extreme heat; (4) he is limited to performing simple, unskilled tasks as defined as SVP 1 or 2 in the Dictionary of Occupational Titles;[3] and (5) he can only occasionally interact with supervisors, co-workers, and the public. (Tr. 54-55).

The ALJ found that Plaintiff cannot perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964.  Accordingly, ALJs routinely

---

[3] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567.  Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

[3] SVP ratings measure the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *See* Dictionary of Occupational Titles, Appendix C, available at http://www.occupationalinfo.org/appendxc_1.html (last visited on February 3, 2015). A job with an SVP rating of 1 corresponds to a job that a typical worker can perform after a "short demonstration only." A job with an SVP rating of 2 corresponds to a job that a typical worker can perform after "anything beyond short demonstration up to and including 1 month." *Id.*

question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding.  Such was the case here, as a vocational expert testified at the administrative hearing.

The vocational expert testified that there existed in the state of Michigan approximately 8,050 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  (Tr. 101-02).  This represents a significant number of jobs.  *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).  The vocational expert also testified that if Plaintiff were further limited to sedentary work there still existed approximately 4,950 jobs which he could perform consistent with his RFC.  (Tr. 102-03).  The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.        **The ALJ Properly Assessed the Medical Evidence**

As noted above, Dr. Parke and Dr. Mesmer have both expressed the opinion that Plaintiff is limited to a far greater extent than recognized by the ALJ.  While the doctors' opinions vary slightly, for the most part both concluded that during an 8-hour workday, Plaintiff can sit for only two hours and can stand/walk for only two hours.  The doctors both concluded that Plaintiff can walk only very short distances and must be able to elevate his feet while sitting.  The doctors concluded that Plaintiff's ability to lift and perform certain postural maneuvers was also significantly impaired.  Dr. Parke, in an earlier opinion, also concluded that Plaintiff's ability to use his upper extremities to perform various work activities was greatly impaired.  The ALJ accorded "little"

weight to these opinions. (Tr. 59-60). Plaintiff asserts that he is entitled to relief because the ALJ improperly discounted the opinions from his treating physicians.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and

15

the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

In discounting Dr. Parke's opinion regarding Plaintiff's allegedly diminished ability to use his upper extremities to perform various work activities, the ALJ observed "[c]onsidering the claimant has no cervical spine problems or upper extremity difficulties based upon the medical evidence of record, it is unclear from what foundation these restrictions are based upon." (Tr. 59). With respect to the other limitations articulated by the doctors, the ALJ concluded "[t]he claimant's physical examinations were consistently normal, there was no evidence that would support elevating the claimant's feet, his stress tests were normal and his ejection fractions were normal." (Tr. 59).

The ALJ further noted that Plaintiff "is having some difficulties adjusting his CPAP machine, which affects his sleep, but given the level of activities of daily living he engages in, it does not seem like he is significantly impacted." (Tr. 59). The ALJ's rationale for discounting the opinions in question is supported by the evidence detailed above, most notably the unremarkable findings consistently revealed by physical examination as well as Plaintiff's reported activities. In sum, the ALJ's decision to discount certain portions of the opinions expressed by Dr. Parke and Dr. Mesmer conforms to the relevant legal standard and is supported by substantial evidence.

**II.        The ALJ Properly Discounted Plaintiff's Subjective Allegations**

As noted above, Plaintiff testified at the administrative hearing that his ability to function was far more limited than the ALJ ultimately recognized. Plaintiff argues that he is entitled to relief because the ALJ improperly rejected his subjective allegations of pain and limitation.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780

(6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

The ALJ discounted Plaintiff's subjective allegations on the ground that such were inconsistent with the medical evidence, treatment history, and Plaintiff's reported activities. (Tr. 55-59). The ALJ's conclusions in this regard enjoy ample support in the record as the discussion above makes clear. In sum, the ALJ's decision to discount Plaintiff's subjective allegations complies with the aforementioned legal standard and is supported by substantial evidence.

**III.        The ALJ Properly Relied on the Testimony of a Vocational Expert**

Finally, Plaintiff argues that the ALJ's finding at Step V of the sequential evaluation process is unsupported by the evidence. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such questions must accurately portray Plaintiff's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed in the state of Michigan approximately 8,050 such jobs. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  February 13, 2015              /s/ Ellen S. Carmody
                                      ELLEN S. CARMODY
                                      United States Magistrate Judge